**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 18-cv-01149-REB-NYW

CHERYL HARRIS,

    Plaintiff,

v.

THE KROGER COMPANY, d/b/a King Soopers,

    Defendant.

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

**Blackburn, J.**

    The matter before me is **Defendant's Motion for Summary Judgment and Memorandum of Law** [#38],[1] filed March 28, 2019. I grant the motion in part and deny it as moot in part.[2]

## I. JURISDICTION

    I have jurisdiction over this matter under 28 U.S.C. § 1332 (diversity of citizenship).

## II. STANDARD OF REVIEW

    Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. **FED. R. CIV. P.** 56(a);

---

[1] "[#38]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

[2] The issues raised by and inherent to the motion are fully briefed, obviating the necessity for evidentiary hearing or oral argument. Thus, the motion stands submitted on the briefs. *Cf.* **FED. R. CIV. P.** 56(c) & (d). *Geear v. Boulder Community Hospital,* 844 F.2d 764, 766 (10th Cir.), **cert. denied**, 109 S.Ct. 312 (1988).

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  A dispute is "genuine" if the issue could be resolved in favor of either party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994).  A fact is "material" if it might reasonably affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Farthing*, 39 F.3d at 1134.

A movant who bears the burden of proof at trial must submit evidence to establish every essential element of its claim or affirmative defense.  *See In re Ribozyme Pharmaceuticals, Inc. Securities Litigation*, 209 F.Supp.2d 1106, 1111 (D. Colo. 2002).  Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper.  *Concrete Works, Inc.*, 36 F.3d at 1518.  All the evidence must be viewed in the light most favorable to the party opposing the motion.  *Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services*, 165 F.3d 1321, 1326 (10th Cir.), *cert. denied*, 120 S.Ct. 53 (1999).

### III.  ANALYSIS

Plaintiff, Cheryl Harris, was a long-time employee of King Soopers, having worked at several different King Soopers stores in and around the Boulder, Colorado, area, most recently at the Gunbarrel, Colorado, store.  In May 2017, Ms. Harris spoke with Amanda Palko, an assistant human resources manager at her store, about transferring to the City Market store in Hotchkiss, Colorado.  The previous September, Ms. Harris had decided she eventually wanted to retire to Hotchkiss, some 250 miles

west of Gunbarrel, and had entered into a contract to buy a home there in February 2017. (**Motion App.**, Exh. 2 at 77, 135-136.) Ms. Harris told Ms. Palko that she needed most especially to maintain her seniority in the transfer. Ms. Harris's seniority gave her greater flexibility over her schedule, which would allow her to return periodically to the Longmont area to care for her disabled adult son. Ms. Palko told Ms. Harris "we'll make it work." (*Id.*, Exh. 2 at 48-49; Exh. 4 ¶ 1 at 3.)

Based on this statement, Ms. Harris concluded she had been approved to transfer to the Hotchkiss City Market store at the same rate of pay and seniority as she held at the Gunbarrel King Soopers store. (*Id.*, Exh. 2 at 162.) Ms. Harris acknowledged she did not know at that time what position she would assume at the new store, when she would start, or what her hours might be. (*Id.*, Exh. 2 at 51-52, 114.) Nevertheless, Ms. Harris listed her home in Longmont, Colorado, for sale on June 6, 2017; she closed on the new home in Hotchkiss on June 23. The sale of the Longmont home closed July 17, 2017, and Ms. Harris moved to Hotchkiss the following day. (*Id.*, Exh. 4 ¶ 4 at 5-6.)

While Ms. Harris had a home in Hotchkiss, she did not, in fact, have a job with City Market there. For one thing, it appears Ms. Harris never completed a transfer request form – which required a manager's signature – although she had done so in connection with each of the previous five between-store transfers she had requested during her tenure with King Soopers. (*See id.*, Exh. 3.) Indeed, the first mention of this form appears to have been in an August 22, 2017, email exchange between Ms. Palko and Margie Morong, the Human Resources Manager for District 3, in which the

Gunbarrel King Soopers store is located.[3]  (*Id.*, Exh. 5 at Dillon (Harris) 00279.)  On August 31, 2017, Ms. Morong sent an email to Tony Redden, the manager of the Hotchkiss City Market Store, and Rich Idler, the Human Resources Manager for District 11, in which that store was located, informing them that Ms. Harris was seeking a transfer.  (*Id.*, Exh. 5 at Dillon (Harris) 00278.)

Around this same time, Ms. Harris personally contacted Mr. Redden to inquire about positions at the Hotchkiss City Market store.  Mr. Redden offered Ms. Harris the only position then available, as a courtesy clerk, which entailed a pay cut.  He also made her aware that her seniority would not transfer to the Hotchkiss City Market store.[4]  (*See id.*, Exh. 2 at 52-54, 107, 110.)  King Soopers and City Market, although now operated as one division of defendant Dillon Companies, maintain their own policies on these matters.  Most relevantly for present purposes, if a King Soopers employee transfers to another King Soopers store, her seniority is maintained, whereas a transfer from a King Soopers store to a City Market store – such as Ms. Harris sought here – results in loss of seniority rights.[5]  (*Id.*, Exh. 1 at 17, 43; Exh. 5 at 3 (Dillon (Harris) 00262); Exh. 7.)[6]  Ms. Harris declined that job offer, as well as at least three others she was offered at the Hotchkiss City Market store in the following year.  (*Id.*, Exh. 1 at 75-

---

[3]  At that point, Ms. Harris was still commuting to the Gunbarrel store from her new home in Hotchkiss.

[4]  Mr. Idler also told plaintiff that transfer of seniority rights was treated differently at City Market stores.  (**Motion App.**, Exh. 2 at 119.)

[5]  Transfers between City Market stores likewise result in a loss of seniority.

[6]  The policy statement on which defendant relies is taken from City Market's collective bargaining agreement with its union.  Although the Hotchkiss City Market store is non-union, it follow this same policy.  (**Motion App.**, Exh. 1 at 17; Exh. 5 at Dillon (Harris) 00262.)

4

76.) She testified that she would not have accepted any position which would have required her to forfeit her seniority.[7] (*Id.*, Exh. 2 at 177-178.)

By this suit, Ms. Harris brings a single claim of promissory estoppel under Colorado law.[8] Because promissory estoppel is an equitable claim, the court – not a jury – is the finder of fact. (*See* **Order** [#46], filed May 15, 2019 (granting parties' **Joint Motion To Convert Trial From Jury Trial to Bench Trial** [#45], filed May 8, 2019, in recognition of wholly equitable nature of sole remaining promissory estoppel claim).)

In the absence of an enforceable contract, a plaintiff may recover on a theory of promissory estoppel by establishing the following essential elements:

> (1) the promisor made a promise to the promisee; (2) the promisor should reasonably have expected that the promise would induce action or forbearance by the promisee; (3) the promisee in fact reasonably relied on the promise to the promisee's detriment; and (4) the promise must be enforced to prevent injustice.

***Jones v. Denver Public Schools***, 427 F.3d 1315, 1325 (10th Cir. 2005) (citation and internal quotation marks omitted). ***See also Continental Air Lines, Inc. v. Keenan***, 731 P.2d 708, 712 (Colo. 1987) (articulating three elements of promissory estoppel – a promise, reasonable reliance, and avoidance of injustice). "Unless this preliminary factual showing is sufficient to overcome the presumption of an employment terminable at the will of either party, the employee's cause of action should fail." ***Continental Air Lines***, 731 P.2d at 712.

---

[7] For a time, Ms. Harris continued to work sporadically for the Gunbarrel King Soopers, commuting from Hotchkiss, but she has not been scheduled to work at that store since February 2018.

[8] Ms. Harris previously dismissed her claims of breach of contract and statutory fraud. (*See* **Order of Dismissal Pursuant to Fed. R. Civ. P. 41(a)(1)** [#39], filed April 3, 2019.) To the extent defendant's motion addresses those claims, therefore, it is denied as moot.

The evidence here fails to establish at least two of these elements. First, a promise is enforceable only when it is "'sufficiently specific so that the judiciary can understand the obligation assumed and enforce the promise according to its terms.'" **Jones**, 427 F.3d at 1325 (quoting **Soderlun v. Public Service Co. of Colorado**, 944 P.2d 616, 620 (Colo. App. 1997). "[M]ere vague assurances," therefore, are unenforceable. **Vasey v. Martin Marietta Corp.**, 29 F.3d 1460, 1465 (10th Cir. 1994).

There is no way in which Ms. Palko's promise – "we'll make it work" – can be construed as anything more than just such a vague assurance. Assuming *arguendo* Ms. Palko had authority generally to approve transfer requests (a fact which is not at all clear from the record), nothing in her statement provides any specifics about the position Ms. Harris would be offered at the Hotchkiss City Market store, the hours she would be required to work, or most crucially, whether she would maintain her seniority. As such, her statement does not constitute an enforceable promise. **See id.**; **Watson v. Public Service Co. of Colorado**, 207 P.3d 860, 869-70 (Colo. App. 2008).

Indeed, Ms. Palko's promise is functionally indistinguishable from that which the Tenth Circuit found insufficient to support a promissory estoppel claim in **Jones v. Denver Public Schools**. There, although the plaintiff was hired as a telecommunications technician, he lacked a valid driver's license, which the written job description stated was a job requirement. On the plaintiff's first day, however, his manager told him "I think we can work around that." **Jones**, 427 F.3d at 1317. The Tenth Circuit found summary judgment appropriate on the plaintiff's promissory estoppel claim:

> [P]romissory estoppel requires a promise that (1) either

6

> discloses promissory intent or constitutes "a *commitment* by
> the employer," and (2) is "sufficiently specific so that the
> judiciary can understand the obligation assumed and enforce
> the promise according to its terms." . . . The statement in
> this case meets neither requirement. The language itself is
> qualified – "I think we can work around that" . . . Even an
> unequivocal pledge to "work around" a job requirement
> would provide the judiciary with too little information about
> the nature and duration of the [employer's] obligations.

*Id.* at 1325 (emphasis in original; internal citations omitted). Ms. Palko's statement about Ms. Harris's job prospects was no more compelling than this.

The evidence also fails to support a conclusion that Ms. Harris reasonably relied on Ms. Palko's statement. "Reasonable reliance is generally conduct or action that would be reasonable for a prudent person to do or take under the circumstances." *Harper v. Mancos School District RE-6*, 837 F.Supp.2d 1211, 1227 (D. Colo. 2011). No reasonably prudent person would sell their home and relocate some 250 miles away based on the representations Ms. Palko made here. Especially because the preservation of her seniority was of such paramount importance to Ms. Harris, it was particularly unreasonable for her to have failed to inquire further on that specific matter, at the very least, before uprooting herself entirely.[9]

Accordingly, defendant is entitled to summary judgment.

**THEREFORE, IT IS ORDERED** as follows:

---

[9] If anything, the evidence suggests Ms. Harris should have been *more* circumspect with respect to the transferability of her seniority rights than an average employee. In September 2016, around the time she decided to retire to the area, Ms. Harris spoke the manager of the City Market store in Delta, Colorado – about 25 miles from Hotchkiss – who told her that her seniority with King Soopers would not transfer to City Market. (**Motion App.**, Exh. 2 at 116-117.) Later, but still before she actually moved to Hotchkiss, Ms. Harris's cousin, who had worked at the Hotchkiss City Market store for 25 years, also informed her that City Market would not honor her seniority if she transferred. Although Ms. Harris did not believe her cousin, she did not seek confirmation from anyone at City Market who might have confirmed or rebutted her cousin's report. (*Id.*, Exh. 2 at 59-60.) At the very least, this history should have made Ms. Harris more wary of Ms. Palko's vague, general promise.

1. That **Defendant's Motion for Summary Judgment and Memorandum of Law** [#38], filed March 28, 2019, is granted in part and denied as moot in part, as follows:

    a. That the motion is granted with respect to plaintiff's claim of promissory estoppel; and

    b. That in all other respects, the motion is denied as moot;

2. That plaintiff's Third Claim for Relief, Promissory Estoppel is dismissed with prejudice;

3. That judgment with prejudice shall enter on behalf of defendant, Dillon Companies, LLC d/b/a King Soopers, and against plaintiff, Cheryl Harris, as to plaintiff's Third Claim for Relief, Promissory Estoppel;

4. That judgment with prejudice shall enter also on behalf of defendant, Dillon Companies, LLC d/b/a King Soopers, and against plaintiff, Cheryl Harris, as to plaintiff's First Claim for Relief, Statutory Fraud pursuant to §8-2-104, C.R.S., and Second Claim for Relief, Breach of Contract, in accordance with my **Order of Dismissal Pursuant to Fed. R. Civ. P. 41(a)(1)** [#39], filed April 3, 2019;

5. That the combined Trial Preparation Conference/Final Pretrial Conference scheduled for May 29, 2019, at 11:00 a.m. is vacated;

6. That the bench trial scheduled to commence on June 17, 2019, is vacated;

7. That defendant is awarded its costs, to be taxed by the clerk in the time and manner specified by Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1; and

8. That this case is closed.

Dated May 23, 2019, at Denver, Colorado.

                                        **BY THE COURT:**

                                        */s/ Robert E. Blackburn*
                                        Robert E. Blackburn
                                        United States District Judge